UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GAIL RIVERS,

        Petitioner,

v.                               Case No. 3:16-cv-749-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
        Respondents.
_____

## **ORDER**

### **I. Status**

Petitioner Gail Rivers, an inmate of the Florida penal system, initiated this action on June 14, 2016,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1). Rivers is proceeding on an Amended Petition (Amended Petition; Doc. 6), filed on August 22, 2016. In the Amended Petition, Rivers challenges 2013 state court (Duval County, Florida) judgments of conviction for exploitation of an aged adult, defrauding a financial institution by scheme or artifice, criminal use of personal information, and fraudulent use of a credit card. Rivers raises two grounds for relief. See Doc. 6 at 5-7.[2] Respondents have submitted a memorandum in opposition to the Petition. See Response to Amended Petition for Writ of Habeas Corpus (Resp.; Doc. 17) with exhibits (Resp. Ex.). Rivers submitted two briefs in reply, one filed on May 19, 2017, see Reply to: Response

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

to Amended Petition for Writ of Habeas Corpus (Reply; Doc. 18), and one filed on October 17, 2018. See Amended Reply (Amended Reply; Doc. 25). This case is ripe for review.

## II. Procedural History

In her Amended Petition, Rivers challenges judgments arising from two cases: 2010-CF-10466 and 2010-CF-11886. Resp. Exs. A-1; A-2. In case 2010-CF-10466, the State of Florida (State) charged Rivers by way of Information with one count of exploitation of an aged adult (more than $20,000 but less than $100,000). Resp. Ex. B-1 at 22. In case 2010-CF-11886, the State charged Rivers by way of amended Information with defrauding a financial institution by scheme or artifice (count one), criminal use of personal identification (count two), and fraudulent use of a credit card (count three). Id. at 92-93. Rivers proceeded to a jury trial in case 2010-CF-11886, at the conclusion of which the jury found Rivers guilty as charged as to all three counts. Id. at 99-101. On May 22, 2013, the circuit court sentenced Rivers in case 2010-CF-11886 to a term of incarceration of ten years in prison as to counts one and two and five years in prison as to count three. Id. at 243-49. That same day, Rivers entered an open plea of guilty in case 2010-CF-10466, id. at 229-30, and the circuit court sentenced her to a term of incarceration of ten years in prison. Id. at 233-37. The circuit court ordered all sentences in both cases to run concurrently. Id. at 248.

During the pendency of Rivers' direct appeal to Florida's First District Court of Appeal (First DCA), Rivers filed, with the assistance of counsel, a motion to relinquish jurisdiction to the circuit court. Resp. Ex. D. In the motion, Rivers sought leave to file a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 so

as to assert a claim of newly discovered evidence and a Brady[3] violation. Id. On May 5, 2014, the First DCA granted the motion to relinquish jurisdiction to the circuit court for the purpose of the filing and disposition of the Rule 3.850 Motion. Resp. Ex. E. Thereafter, on July 8, 2014, Rivers filed a pro se motion for postconviction relief pursuant to Rule 3.850 (Rule 3.850 Motion) in which she raised two claims: newly discovered evidence (ground one) and a Brady violation (ground two). Resp. Ex. C-1 at 1-7. Following an evidentiary hearing, the circuit court denied the Rule 3.850 Motion on March 5, 2015. Id. at 14-19. Rivers' appeal of the denial of her Rule 3.850 Motion was consolidated with her direct appeal. Id. at 33.

In her initial brief, Rivers raised the following claims: (1) the circuit court erred in introducing exhibits as business records; (2) the circuit court erred in admitting as evidence a video and still photographs; (3) the State committed a Brady violation; (4) newly discovered evidence entitled Rivers to a new trial; and (5) Rivers' guilty plea in case 2010-CF-10466 was involuntary. Resp. Ex. I at 32-50. The State filed an answer brief and an amended answer. Resp. Exs. J; L. On April 27, 2016, the First DCA per curiam affirmed the judgments and sentences without a written opinion, and issued its Mandate on May 13, 2016. Resp. Ex. M.

### III. One-Year Limitations Period

This action is timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

---

[3] Brady v. Maryland, 373 U.S. 83 (1963).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Rivers'] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court

4

decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

5

First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[4] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298

(2017). Also, deferential review under § 2254(d) generally is limited to the record that was

---

[4] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

7

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[5] supra, at 747–748, 111 S. Ct. 2546; Sykes,[6] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring

---

[5] Coleman v. Thompson, 501 U.S. 722 (1991).
[6] Wainwright v. Sykes, 433 U.S. 72 (1977).

8

> procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

---

[7] Murray v. Carrier, 477 U.S. 478 (1986).

9

> Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception
> is exceedingly narrow in scope," however, and requires proof
> of actual innocence, not just legal innocence. Johnson v.
> Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Rivers alleges that her right to due process was violated when the circuit court did not grant her a new trial based on newly discovered evidence. Doc. 6 at 5. According to Rivers, she is entitled to a new trial because Sean White admitted in an affidavit that he, not Rivers, committed the crimes for which Rivers is currently incarcerated. Id.

Respondents contend that this claim is unexhausted. Doc. 17 at 6-8. Although Rivers asserted a violation of her due process rights before the circuit court, Respondents maintain that Rivers failed to raise the federal constitutional nature of this claim on appeal. Id. As Rivers failed to litigate her due process claim with the First DCA, Respondents aver this claim is procedurally defaulted. Id.

The record reflects Rivers raised a similar claim as ground one of her Rule 3.850 Motion and alleged that her conviction and sentence were obtained in violation of her

federal constitutional due process rights. Resp. Ex. C-1 at 3. While Rivers raised the circuits court's denial of this claim on direct appeal, she did not argue the federal nature of this claim in her initial brief. Resp. Ex. I at 47-49. Instead, she argued in terms of state law only. Id. (citing Swafford v. State, 125 So. 3d 760 (Fla. 2013); Jones v. State, 709 So. 2d 512 (Fla. 1998)). Accordingly, this claim is unexhausted because Rivers failed to present the federal nature of this claim on appeal; thereby, failing to invoke "one complete round of the State's established appellate review process." Boerckel, 526 U.S. at 845. As such, the Court finds the claim raised in Ground One is due to be denied as procedurally defaulted.

Nevertheless, even if properly exhausted, Rivers is not entitled to relief because the claim raised in Ground One is essentially a claim of actual innocence. While a federal habeas petitioner may allege actual innocence to overcome a procedural bar or the application of the one-year limitations period, the Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (citing Herrera v. Collins, 506 U.S. 390, 404-05 (1993)). However, the Eleventh Circuit "forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases." Jordan v. Sec'y Dep't of Corr., 485 F.3d 1351, 1356 (11th Cir. 2007) (citations omitted); see also Cunningham v. Dist. Attorney's Office for Escambia Cty., 592 F.3d 1237, 1272 (11th Cir. 2010) (recognizing that "this Court's own precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases."). In Herrera, the United States Supreme Court noted that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief

11

absent an independent constitutional violation occurring in the underlying state criminal conviction." Herrera, 506 U.S. at 400. The Supreme Court explained, "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." Id. Therefore, this claim is not cognizable on federal habeas review.

Even if it were cognizable, the claim is subject to denial on the merits. Under Florida law, to assert a valid claim of newly discovered evidence in a Rule 3.850 motion, a defendant (1) must assert facts that were unknown to the trial court, the defendant, or counsel at the time of trial, and that this evidence could not have been known to them through the use of due diligence; and (2) the newly discovered evidence would probably produce an acquittal on retrial. Jones v. State, 591 So. 2d 911, 915-916 (Fla. 1991) (quoting Hallman v. State, 371 So. 2d 482, 485 (Fla. 1979)). Rivers cannot establish the second prong.

The record reflects that two of the victim's credit cards were stolen and used to make several purchases, including the following: (1) a 42-inch Panasonic television with a home theater system from Best Buy; a panel door, washing machine, and tool kit from Lowes; and a queen bedroom set and sofa from Rooms-to-Go. Resp. Ex. B-5 at 268-72, 281-84, 292-307, 335-53. Upon the victim reporting fraudulent activity as seen on her bills, United States Postal Inspector John Britt began an investigation. Id. at 369. During his investigation, Britt learned Rivers rented the U-Haul truck used to pick up the furniture bought from Rooms-to-Go. Id. at 298-300, 322-26, 371-74. Britt then went to Rivers' home to interview her about the case. Id. 374-77. When asked whether she rented a U-Haul, Rivers initially stated she may have rented it or her daughter may have used her name to

rent it; however, Rivers eventually told Britt she did rent it and that she lent it to a man nicknamed Pee-Wee. Id. at 378. The interview took place inside Rivers' home, during which Britt noticed the sofa and queen bed in Rivers' home matched the furniture stolen from Rooms-to-Go and he further observed that Rivers had a 42-inch Panasonic television matching the description of the item stolen from Best Buy. Id. at 379-82. Britt questioned Rivers about the items, with Rivers responding she purchased the items; however, she could not produce the receipts. Id. at 383. Britt thereafter confronted Rivers with surveillance footage taken from Lowes and when Britt asked her if she was the woman in the video, Rivers responded in the affirmative. Id. at 384-85. Rivers initially stated she bought the items from Lowes with cash, but when shown the receipt from Lowes indicating a credit card was used, Rivers stated she paid with a credit card she had gotten from a "friend of a friend." Id. at 384-85. Notably, after ending the interview and leaving the house, Britt noticed the door to Rivers' home also matched the panel door purchased at Lowes with the stolen credit card. Id. at 387-89.

This evidence demonstrates that Rivers rented the U-Haul truck that was used to load furniture purchased with a stolen credit card and that Rivers was on a surveillance video using the stolen credit cards to make a purchase at Lowes. Moreover, Britt, a Postal Service Inspector, observed several of the stolen goods in Rivers' home. In light of this considerable evidence of Rivers' guilt, the Court finds White's potential testimony would not have led to an acquittal, this is particularly true in light of the discrepancies between Rivers' allegations of what occurred and the details outlined in White's affidavit. Although Rivers testified at trial that she was innocent and that she never told Britt she rented a U-Haul or confessed to him that she was the woman in the video, in White's affidavit, he

states that "I borrowed [Rivers'] U-Haul to transport the items that I purchased and never told her what took place." Id. at 10. White's affidavit reflects that Rivers did rent a U-Haul; however, Rivers denied renting one at trial. Additionally, in her Rule 3.850 Motion, Rivers alleged that "she did not know Sean White." However, White's use of the term "borrowed" and his statement that he never told Rivers of what took place, suggests a relationship between the two. Accordingly, in light of the discrepancies between White's affidavit and Rivers' trial testimony and her allegations in her Rule 3.850 Motion, as well as the substantial evidence of Rivers' guilt, the Court finds White's affidavit would not probably produce an acquittal on retrial. See Jones, 591 So. 2d at 915-916. For all of the above stated reasons, the claim in Ground One is due to be denied.

### B. Ground Two

In Ground Two, Rivers contends that the State committed a Brady violation by withholding a photograph of Sean White with a woman the State believed to be Rivers' daughter. Doc. 6 at 7. Rivers avers that the State knew of White and the photograph prior to her trial but failed to disclose it to Rivers during the discovery process. Id.

Rivers raised a similar claim as ground two of her Rule 3.850 Motion. Resp. Ex. C-1 at 4-5. Following an evidentiary hearing, the circuit court denied this claim, stating in pertinent part:

> The State did not hide any evidence from the Defendant in her case. The picture of White and the Defendant's daughter together was evidence pertaining to only White's case and not the Defendant's. Hurst v. State, 18 So. 3d 975 (Fla. 2009) addressed the standards the Court must consider for a Brady violation. Under the Hurst standard, the defendant has the burden to show (1) that favorable evidence, either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced. 18

14

> So.3d 975, 988. [sic] Neither the affidavit (which the State obviously did not have in its possession) nor the pictorial evidence in White's case are neither favorable whether exculpatory or impeaching. Consequently, the affidavit and the picture in question do not qualify as newly discovered evidence.
>
> "The prosecution is not required to provide the defendant all information regarding its investigatory work on a particular case regardless of its relevancy or materiality." Hurst, 18 So.3d at 988. [sic] citing Overton v. State, 976 So.2d 536, 562 (Fla.2007) Wright v. State, 857 So.2d 861, 870 (Fla.2003) (rejecting claim that "information contained in police files concerning other possible suspects and other criminal activity in the same neighborhood" was Brady material). In applying the Brady criteria, "the evidence must be considered in the context of the entire record." Floyd v. State, 902 So.2d 775, 779 (Fla.2005).
>
> Carroll v. State, 815 So.2d 601 (Fla.2002) is also instructive on this issue. In Carroll, the defendant argued that the State withheld favorable evidence that consisted of police investigative notes that linked the defendant with another suspect, that another person was believed by the family to be involved, and that other crimes, including another rape, had occurred in the neighborhood. In denying relief on this issue, we [sic] said, "As noted by the State, the prosecution is not required to provide the defendant all information regarding its investigatory work on a particular case regardless of its relevancy or materiality." Id. at 620. "The mere possibility that undisclosed items of information may have been helpful to the defense in its own investigation does not establish constitutional materiality." Wright, 857 So.2d at 870-871.

Id. at 17-18. The First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Ex. M.

To the extent that the First DCA decided the claim on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of

---

[8] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

15

state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Rivers is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, relief on the claim in Ground Two is due to be denied. The Eleventh Circuit has explained:

> [T]o establish a Brady violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant;(2) that he did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and, (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

United States v. Bailey, 123 F.3d 1381, 1397 (11th Cir. 1997) (quoting Routly v. Singletary, 33 F.3d 1279, 1285 (11th Cir. 1994)). As to the materiality prong of Brady, "the nondisclosed evidence is material: 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.'" United States v. Alzate, 47 F.3d 1103, 1109-10 (11th Cir. 1995) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

Rivers has failed to establish how a picture of White with her daughter would be favorable to her. Rivers' conclusory allegation that the picture somehow links her crimes with the unrelated crimes for which the State prosecuted White, is insufficient to warrant

16

habeas relief because it amounts to nothing more than speculation. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (explaining that a petitioner is not entitled to federal habeas relief "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible"); see also Brownlee v. Haley, 306 F.3d 1043, 1060 (11th Cir. 2002) (holding that "[s]peculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation"). Therefore, Rivers has not demonstrated the State possessed evidence favorable to her. Moreover, even had Rivers known about this picture prior to trial, there is no reasonable probability the outcome of the proceeding would have been different because, as described above in the Court's analysis of Ground One, the State presented substantial evidence of Rivers' guilt at trial. A picture of White with Rivers' daughter would not have impeached the credibility of any witness or otherwise negatively impacted the evidence of Rivers' statements to Britt, the video surveillance footage, or the evidence concerning the U-Haul. Accordingly, Rivers has failed to establish a Brady violation occurred; therefore, the claim in Ground Two is due to be denied.

### VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Rivers seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Rivers "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282

17

(2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Amended Petition (Doc. 6) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3. If Rivers appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of January, 2019.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

Jax-8

C: Gail Rivers, #J49846
Michael McDermott, Esq.